Case 25-5149 Lewis Alford v. Brandon Deffendoll, et al., argument not to exceed 15 minutes per side. Counsel, you may proceed for the appellant when ready. Good morning, Your Honors. Drew Justice for the Plaintiff Appellant Lewis Alford. I'll reserve three minutes. Fine. In this case, Mr. Alford was arrested for possessing a clear liquid in a syringe, along with one or more accompanying items, most notably the syringe itself. But even though heroin is not a clear liquid, and even though we are unable to see that anything has been dissolved in this clear, seemingly watery liquid, the police's argument in this case is that we can just assume that there was something dissolved in the water and that that something was heroin. And then, of course, that Mr. Alford knowingly possessed it. I submit that a reasonable jury could conclude that the police lacked probable cause here. I submit that the law was clearly established and that a reasonable jury could find that the county's deliberately understaffing of its police department was the moving cause behind the error that resulted. Now, the probable cause here, first of all, simply failed. The only probable cause that we even have as to any drugs is just the police saying, we found a syringe with clear liquid, or they specifically just said a substance, and we believe that it is heroin. And so the only basis for any probable cause, if there's to be any probable cause, the only basis is just the police saying we believe it. So wasn't there other paraphernalia of drugs and substances that looked like drugs that could justify the arrest? The police pointed to sort of an assortment of different things, but the only substances that they're saying that they think looked like drugs, one of which may have actually been some real drug residue, were both found on the female passenger. One of them was in a glass bead container, and then one of them was purportedly found on a piece of paper. All of the video doesn't really show it. But he was arrested for drug paraphernalia and the syringe with what they suspect was heroin, and then also for this what they call legend drug. So in terms of the false arrest claim that you have, would it not be enough for one of those to be an arrest based on probable cause? My understanding is that under Sixth Circuit law, at the time at least, I think it could arguably change now, but in terms of clearly established law at the time, yes, probable cause for one would just find arrest. I would submit that that doesn't necessarily apply to the malicious prosecution. Right, but I was just talking about the arrest issue. Yes, Your Honor, but I'm disputing that there was probable cause for any type of arrest. Really? Because we've got all these cases that talk about if you find it in the car and it's between the people or one person has it, and here, tell me where I'm wrong. I thought they found syringes, bag containing white powder, additional baggies, pills in a prescription bottle. We can talk about that later. Labeled potassium CL, prescribed to someone not in the car, and two electronic scales. Did they find all that? You mentioned a baggie with white. My understanding, or at least my assumption, is that it was just placed into a baggie to be sent to the lab, whatever the residue was. Okay, so they found residue but not a bag, but still, they found residue, if that's correct, I can't remember. But in all those other things, including two digital scales? Yes, Your Honor. Do you have any case saying all of that is not probable cause? Because I think I have about ten saying just marijuana and a scale or other things like that found in a car is probable cause for arrest. Well, if you find marijuana, that would be probable cause because marijuana is… Well, I guess they could know. It's pretty easy to know with marijuana. My understanding of the case law is that the police are allowed to say, based on our experiences, I think I can reasonably well identify this substance as a drug, and that could include marijuana. But let me ask you, if they found white powder and a digital scale? If they found it on Mr. Alford's person, then I would say yes. The marijuana cases would still apply if they find it in the car, right? They would apply if you're conceding that white powder and a digital scale is enough on his person. Then if we have car cases saying, look, if they're in proximity to it, that's enough. I mean, recall probable cause is an awful low standard. Here's the deal. My briefing on this was limited at the trial level because I didn't understand Mr. Alford to even be accused of these other items that were taken from the female. But I have pointed in my appellate brief to United States v. Montgomery, where this court talked about how the police can infer collective ownership of an item such as drugs if the item is out in the open and if it suggests a felony. But here the items were in the lady's pocket or her purse, and they don't suggest a felony. It's like residue. And so neither of those two prongs is satisfied here. Why don't we get to the malicious prosecution issue? What do we do with the Ciaverini case and the Howell case in terms of deciding whether your client's malicious prosecution claim can go forward? I don't view the false arrest and the malicious prosecution as being that different. There are some differences. One is that Officer Smith is only charged in one. And then the other is that, as Your Honor is alluding to, for malicious prosecution, if one claim is falsified, then you can still potentially proceed even if others were valid. What did Defendall do to further the prosecution other than arrest your client? Did he do something else? He went and testified to the magistrate to take out the formal charges against him. And that's why I didn't charge Smith for that part, because Smith undisputedly did not testify. There's a prosecutor asking him to show up and testify, and he doesn't make the decision. No, Your Honor. I'm not referring to at a trial or at a hearing. I'm referring to he's the one who prosecutes by filing the charges. And so it would not have happened without him.  Yes, Your Honor. And it's under, I think it's Tennessee Rule of Criminal Procedure. I want to say it's three, maybe five. There's another element of malicious prosecution, you can correct me if I'm wrong, that says there has to be custody related to the prosecution at issue. And how do we satisfy that element? Other than the heroin, I mean, how do we satisfy that element on the legend drug piece? I honestly can't remember off the top of my head whether the legend drug, whether they said any kind of bond. April Ashley. The bottle with April Ashley on it. Yeah, I'm saying I can't remember whether they said a bond on that, whether he was technically incarcerated on that. He was definitely incarcerated on the others. And I think it's undisputed he was incarcerated for a week or two until he said he was going to become a snitch and then got out and then didn't really follow through. So that element should be satisfied, I submit. For all three charges? At least two. I can't remember off the top of my head whether the legend drug would satisfy it. I did want to, I guess, just highlight that the law here should be viewed as clearly established in Mr. Alford's favor because I cited two different important cases, one of which is pretty broad but is still directly on point in its doctrine and the other is very specific and is still in Mr. Alford's favor. The broad case is Nathanson v. United States and that case says that the police, to have probable cause, they have to allege facts. And here the police not only did not allege facts in their affidavit or even in their depositions when I tried to ask them, you know, what was the factual basis for believing this, they couldn't remember any factual basis. And then I asked, well, did you even believe it to be heroin? I don't remember whether I even really believed it to be heroin. And then, of course, we have the statements in the video where they're implying they don't think they've got probable cause yet, they don't think they've found drugs. They say, we found paraphernalia, which implies we're still looking for drugs. And, you know, they mentioned they found a trace amount of something that they think might be heroin. Can I ask you an unrelated question that you might know the answer to? When Tennessee sets bail and they set different dollar amounts, is it cumulative or is it concurrent? It's cumulative. Okay. And then... So if it's $15,000, $2,000, $3,000, right, what is detaining you? The lack of any money? The lack of the $15,000? How do you figure that out? You'd have to pay, I mean, in theory you could bond out on one charge and not the other and still stay in jail. Right. And not get credits toward the one you bonded out on. But is it 10% like you pay a bail bondsman? You can either pay the full amount in cash or you can pay 10% to a bondsman who will pay his credit worth of cash. And then the other more specific case I cited specifically involves a clear liquid found alongside some residue on a spoon. So it's like the exact same two things we've got here. I don't know if there was any scale, so maybe that's a difference. But finding a clear liquid alongside residue, the court said that was suspicious, but it was not enough to satisfy the plain view exception for the Fourth Amendment. And so I submit that that clearly... And what case is that? United States v. McLevain. And that's the key case I cited down below. It's also the key case I've cited here. And so... But in that case, no scales, no baggies, no extra syringes. That is correct, but they had a pill bottle which was filled with water, which, you know, you're not really supposed to fill a pill bottle with water, but that's more strange than a syringe being filled with water because a syringe is meant to be filled with water. So I didn't really get to cover the county liability, but I submit that they did not... What was your theory as to why the county should be liable? The sheriff... I mean, aside from the fact that they didn't meet their burden for summary judgment purposes, the sheriff also just frankly admitted that due to the county's deliberate understaffing of his police department, he was not able to supervise his low-level officers, and that if he had been properly staffed, he would have had people reviewing the reports, reviewing these officers, and supervising them. So I just submit... Would that then depend on the officers not following the law in this case? So if we were to rule against the officers, would the county liability immediately be lost? If you were... Could the county be liable if the officers did not do anything wrong here? No. I have to show that probable cause was lacking, and I have to show either that the law was clearly established or that the county unsupervised its officers. Thank you. Good morning, Your Honors, and may it please the Court, my name is Will Caldwell. I represent the defendants, Cannon County, Brandon Defendall, and Zachary Smith. For the reasons I'm about to state, we request that this Court affirm the grant of summary judgment for the United States District Court for the Middle District of Tennessee. I want to focus on three issues, but I'll start with the one that Your Honors were asking about, the Ciavarini case. And I want to start with that one because not only did you ask about it, it was a Sixth Circuit case, and Judge Moore was on that opinion. It's our position that the United States Supreme Court opinion in 2024 does not impact or does not require that this Court reverse the District Court's grant of summary judgment. And that's primarily because the District Court found that there was probable cause to make the arrests and to make the charges as well. Yes, sir. Can you explain the legend drug charge? Because I'm not sure I grasp why there's probable cause for the legend drug. So the legend drug charge is, well, my brief answer is the totality of the circumstances. Okay, that's the test that the Court must look at when it's determining whether probable cause exists and whether a reasonable officer in my client's position would have concluded that there was enough evidence to suspect that a crime had been committed. The totality of the circumstances in this particular case were that there was a loaded syringe that was attempted to be concealed, baggies, scales, another box full of syringes, and a powder that was also found. So all of this information taken together, in addition to the fact that the pill bottle was prescribed to somebody who was not in the car. But the statute says, without the drug having been prescribed, this was a drug that had been prescribed to someone. So how is it a violation of that legend drug statute? Well, Your Honor, I'm not saying that there was a violation. I'm saying there's probable cause for the charge to be brought. But I mean, how? If you look at this pill bottle, it's prescribed to someone, and the statute says all it has to do is just, you know, has to have been prescribed to someone. Where's the crime? Right, but it has to be prescribed to – it's not in the possession of the person it was prescribed to. That's what the statute says. Then I'd commit that crime when I had my kid's prescription. Yes, Your Honor, I understand. But the issue here is what's in that pill bottle, correct? There was no question, logically, that there was not potassium chloride in that pill bottle, right? At the time when the arrest was made and the charge was made, yes, I think there was an understanding that it was potassium chloride. But I do not believe that at the time there was a determination whether this constituted a legend drug under the statute. But if I'm driving down the road and I'm stopped and I happen to have a pill bottle for my mother containing some innocuous substance here, it wasn't like it was containing morphine or something, I can be arrested because I'm carrying a pill bottle that's got my mother's name on it with potassium chloride, which, as I understand it, is just like vitamin K or something? In that situation, Your Honor, I would say no, of course not. Of course, what happened in this situation was there were arrests for two other charges that were obviously probable cause existed for those as well, as Your Honor's pointed out. So hypothetically, we don't have a problem with there being probable cause to arrest because of the other matters. But what about the malicious prosecution claim on the legend drug matter? Yes, Your Honor, and that was the Ciavarini case.  Because when it came – a similar issue came to this court before in 2023. This court said, well, if there is probable cause for one charge, then –  The Supreme Court said we were wrong and we were following old law in the Sixth Circuit, so we had to do that, and now the Supreme Court has told us what to do. And so this is where we need to apply Ciavarini, and I'm really wondering why at least the malicious prosecution claim vis-a-vis the legend drug charge that was going to be prosecuted was part of what supposedly, according to your opponent, Defendall made the complaining presentation to allow the prosecution to go forward on that. Why isn't that under Ciavarini and or Howell something that we would have to reverse the district court on? Three reasons, and I'll try to remember all of them. First, because the court found probable cause. The district court found probable cause, and it correctly found probable cause on the possession of a prescription drug unlawful. So that's number one, because in the Ciavarini case, there was no probable cause for this other claim that was part of the malicious prosecution. Number two, when the Ciavarini case came out in 2024, it was two years after my client had already arrested and charged Mr. Alford with this particular charge as well as the other two. So under the qualified immunity analysis, this court has to look at what was the clearly established law at the time of the event, not by the time the court reviews it two years later or three years later. So at the time my client made the arrest and made the charge, Ciavarini had- Can I give you a hypo on that? Let's say your client charged someone with trespass, right? They trespassed on the property or whatever, or breaking and entering, but they knew they couldn't get them detained on that, so they also made up a murder charge. Would that pre-Ciavarini not be subject to a malicious prosecution claim? That pre-Ciavarini would not be subject to a malicious prosecution claim if there was probable cause on the trespass charge. As long as the trespass charge would detain them, but I'm saying it doesn't. Oh, you're saying it doesn't detain them, it's simply- Or the legend drug. They charge them with a legend drug charge, and they make up a murder charge to detain them. Okay. Then I think that Ciavarini would apply, because the question in Ciavarini, I think this is the analysis, is that for a malicious prosecution case to apply, it has to be a charge that leads to a seizure. Right. And so pre-Ciavarini, you're saying that wasn't the case even on a murder charge? No. I think I misunderstood Your Honor's question at first. I'd say pre-Ciavarini, because of the way the malicious prosecution analysis takes place, I think that pre-Ciavarini, the murder charge, would be a basis for malicious prosecution in your analysis, in your hypothetical. Why don't we have to look at whether the legend drug charge, just assume for a hypo that there's a lack of problem for cause, why don't we have to look at whether that resulted in the detention? That was going to be my third point, Your Honor. The third point was going to be a lack of causation. Now, the Supreme Court made it clear that it was not going to set a rubric for how we determine causation and how it applies post-Ciavarini, but I think that this court can make that decision today in its opinion, because it's clear- How would we decide the causation issue? Because I think in this case you can decide it because it's clear. We don't have a situation like Your Honor pointed out, or the hypothetical like Your Honor pointed out. This is a clear-cut case of there is absolutely probable cause to arrest and charge for these other two crimes that Mr. Alford committed, and so as a result, we know that he was going to jail. It's clear that this- The record doesn't reflect, correct me if I'm wrong, that the parole was revoked for one or two or three of these specific charges. It does. It does actually, yes. And I can't cite to you where in the record, Your Honor, but I can tell you this. And this gets a little bit to the malicious prosecution post-charge, because clearly that's part of Mr. Alford's theory, although we really didn't get there in the district court's analysis because probable cause was found. But after the charge was brought, the Board of Parole, it has its own hearing, and it has its own non-judicial officers who make a ruling on it, and it subpoenaed my officers to come testify, and my officers came and they testified. And Mr. Alford agreed that their testimony was truthful, absolutely truthful. So there's no malicious intent, none of that stuff, that would come in a malicious prosecution case. What the Board of Parole found was that there was a- I'm blanking on the word, but drugs. The scales and the baggies and the paraphernalia, exactly. The paraphernalia was an adequate basis. I believe it is, Your Honor, yes. But doesn't your opponent conceive that he was not in custody ever on the legend drug? I think that's in his brief. Tell me if that's not in his brief, that basically the reason his parole was revoked was because of the syringe or the paraphernalia or one or the other. That's correct, yes, Your Honor. That is correct, and so that was one of the- we brought that up because we were attempting to demonstrate that there are undisputed facts regarding my client's involvement post-charge that would lead to a summary judgment on malicious prosecution. Okay, so if the parole board says that he is being then- his parole is being revoked because of the paraphernalia and not because of the legend drug, was he never incarcerated because of the legend drug? I thought there was three days of jail that he was incarcerated in based on the three charges that were filed against him. Am I wrong? No, you're correct, Your Honor. He was, but the point that I was making is those few days of detention based on the arrests, we can show-we can prove that those were because of valid charges, valid arrests related to these other two claims. You can prove that they're valid because of what the parole board did. Is that what the proof? No, Your Honor, I'm referring- He wouldn't have been held in jail for three days just on the legend drug. Is that what you're saying? That's what I'm saying. I'm saying he would not have been held in jail because of the legend drug charge because he had two other charges, one for possession of a Schedule I drug and one for possession of paraphernalia. And so Ciavarini, which said you look at each count separately, you're saying doesn't apply because the other two were valid bases for his being held those three days? Yes, Your Honor, because Ciavarini left open the question of causation. It said for the purposes of a malicious prosecution claim, you have to look at each charge individually, and we're doing that. But it says for determining sort of the next step is whether that allegedly charge brought without probable cause would have caused this detention. That's a separate question that needs to be determined later. Which really sounds like it's limiting the Supreme Court's Ciavarini decision and letting us go back to the way the Sixth Circuit had been doing it before almost. I would disagree with Your Honor on that simply because if you look at the example that Judge Thapar gave, I would say that in that scenario right there, you could clearly indicate that that's an application of Ciavarini that would allow for malicious prosecution on that gun charge despite perhaps valid probable cause to make another charge as well. So I think you can have your cake and eat it too, in other words. So Ciavarini doesn't go away simply because this court does what I'm asking it to. Any other questions on Ciavarini? Because I've got two minutes and I was going to wrap up on these other two issues. The other issue I was going to bring up, and I'll try to do this quickly, is that the plaintiff failed to identify a disputed fact with respect to a tribal issue on the issues of qualified immunity. A lot of the facts that the plaintiff cites to and relies upon have to do with subjective intent of the officers at the time, and as the district court pointed out, it's really an objective analysis of what a reasonable officer would do. That includes the deposition testimony of Officer Defendall, which we would also submit was sort of an unfair portrayal of that testimony, talking about what he didn't recall when, in fact, on other sections of the testimony, he very clearly explains what his reasoning was and why he believed it was heroin. Your opponent said heroin is not a liquid. What do you do with that? Well, heroin can be dissolved. That was part of the officer's testimony was that through interdiction classes that he'd taken as a part of his law enforcement training, he learned that intravenous drug users can dissolve drugs or otherwise liquefy them for intravenous drug use. So that was that. He also refers to the body-worn camera footage and some statements made thereon about suggesting that there was an intent to do something other than arrest this man validly. Mr. Alford also recharacterizes the court's emphasis on a powdery substance and brings in a new argument regarding Miss Cass, which I think Judge Thapar has dealt with. In other words, she was in the car with him. There was drugs found in the car. I do not think it's clear. Drugs were found on her person. Should he be tagged with that? Well, drugs were not found on her person, but I would say that he could be. But here's the thing. He was not charged with the powdery substance that was allegedly on her person. It really goes to the issue of the totality of the circumstances. He's charged with the liquid in the syringe. Correct, Your Honor. The liquid in the syringe was never tested. I see my time's up. Let me answer your question. So it was submitted to the Tennessee Bureau of Investigation to be tested, and it was returned because of a policy they have against testing sharps. So I'm correct in saying it was not tested. It was not tested, right. It was attempted to be tested, but not tested. Thank you. Thank you. With regard to the – Judge Ritz had asked about whether the defendant was jailed on all three charges, and I have checked. The legend drug actually had a bail set of $3,000, so he was jailed on that one. That was actually higher even than the bail set on the paraphernalia, which was only $2,000. But you conceded at your brief that that didn't have a material impact on the detention, correct, on page 46 of your brief? I don't know that I – I don't think I conceded that it had no material impact. I think I was conceding that it was not as significant to the damages because the parole was ultimately revoked for the paraphernalia and the legend drug, but the legend drug could only result in a parole revocation by law of up to 30 days. And so I was saying that the paraphernalia was more significant. I don't know that I was meaning to concede that it didn't have any impact on the detention at all. So he could, under your understanding of Tennessee law, if he was carrying his mother's potassium prescription, he could be – have his parole revoked for 30 days? My submission would be that they violated the law and the parole board doesn't follow the law very well in general, so it shouldn't have happened. But that's what they believe, that if you're carrying your mother's potassium chloride prescription, which is a totally inoffensive drug, I'm hypothesizing, I don't know whether – Yes, Your Honor, it's basically like – it tastes like salt and it's – you can add it to food. A lot of Americans are potassium deficient. And your belief is that they believe that the law in Tennessee is that you cannot drive around in a car with somebody else's potassium chloride prescription? Apparently, Your Honor. Yes, ma'am. Thank you. I would point out – I guess I would heavily emphasize the fact that we don't have – haven't been given any evidence that this drug, if he possessed any drug, was heroin specifically. And it's very likely that the fact that it was heroin, a Class I drug, is what jacked the bail up on that particular charge. But, I mean, the question is, even if we assume that this invisible possible solute in the solvent of water was some kind of drug, that there was a solute at all and that it was specifically a drug, what evidence do we have that it was heroin? And so I just submit there was a lack of probable cause on that in particular. So what should the police do if they think that someone has a syringe with an illegal drug in it? Should they not arrest immediately, but seize the drug and have it be tested? That is possible, Your Honor. I would say one thing is they could – in theory, they could maybe say very confidently, based on their prior experience, that they really think it is heroin and give some specific reason why. Other than that, they could maybe field test it. Other than that, they could maybe seize it and lab test it. And so just one final point is just if we're going to try to link this syringe to the drugs, I would submit it's unfair to Mr. Allford to link them to drugs that were found in the woman's purse or in her pocket. But ultimately, I submit probable cause did fail, and this Court should reverse the separate judgment and remand for trial. Thank you. Thank you both for your argument, and the case will be submitted.